All rise. Okay, the next case on our docket is 514-0547, People v. Chivas Day. Let's see, these things are crazy now. So, you are not David Robinson. Tell us who you are. My name is Woon San Nam, and I represent Chivas Day. Okay, may I please report? Counsel? Assistant Apology Defender, Woon San Nam, on behalf of Chivas Day. Mr. Day requested that this court remand his case for an evidentiary hearing because he made a substantial showing that plea counsel was ineffective, where he gave Aaroni's advice regarding an enhancer. Here, after entering an open plea to Counts 1, 3, and 4, Mr. Day was convicted of two counts of aggravated DUI and a count of reckless homicide. No direct appeal was filed. Subsequently, Mr. Day filed a pro se post-conviction petition alleging various claims of interruptive assistance of counsel, but which included an allegation that his guilty plea was made under a misapprehension of law, in that plea counsel misadvised him that if he went to trial and was convicted, he would be convicted on all charges and he would get an enhancer, meaning his time would be enhanced. He alleged that he would not have pled guilty had he known he would not be automatically subjected to this enhancer, as plea counsel had informed him. After reviewing the pro se petition, the trial court advanced this to the second stage and appointed a post-conviction counsel. Post-conviction counsel filed an amended petition, asserting, among other things, that plea counsel was ineffective or erroneous in advising him that had he gone to trial and was convicted, he would automatically be subjected to this enhancer. The amended petition further claimed that he only learned about plea counsel's advice being false after he pled guilty and that he only pled guilty based on these misrepresentations. What about the fact that the trial court advised him? Well, Your Honor, Did that cure it? In this case, it did not cure it. So the trial court advised him about the maximum sentences, the minimum sentences, and his rights. What plea counsel did was tell him that if he went to trial, you would get this enhanced sentence or this enhancer. As far as Mr. Day knows, he pled guilty, so he never went to trial. He was never actually allowed, or he was never extendable in the first place. But what he's saying is plea counsel advised him prior to the plea that had he gone to trial and was convicted, he'd get this enhancer. But isn't what the admonishments that the court gives, they say you have the right to go to trial, and if you go to trial, witnesses will be called and all of that stuff, and then at the end of those admonishments, the court says you're charged with this, and your potential range of sentencing is that. How does that not cure what plea counsel did in this case? Well, the facts here show that right before the plea, the state and the trial court kind of got into a discussion over whether Mr. Day was extendable or not. Was that before? I'm sorry. I don't mean to use the word before. In the presence of Mr. Day? That's correct. Is he standing there? He's standing there. As he's standing there, the state told the parties in the court, these are the terms of the plea, and the state says he's not extendable on any of these charges, remember. Actually, I take that back. He is no, I'm sorry, he's not extendable. The trial court shows this confusion when the trial court starts admonishing the defendant, that the court asks the state again, wait, was he extendable? So ultimately, they tell him that he's not extendable, but with the plea counsel's misadvice, plus this confusion right before the plea, it's not unreasonable for Mr. Day to believe that there was a potential for an answer, and it's not completely out of the question that plea counsel told him that there was an answer. The notable part of that is that plea counsel didn't say one way or the other when the trial court and the state were kind of going back and forth about whether he was extendable or not. So what is the constitutional violation that we're looking at? We're looking at an ineffective assistance of plea counsel. Sixth Amendment? Yes. Okay. So your argument is that you made a substantial showing of a Sixth Amendment violation, and you want us to remand? That's correct, Your Honor. Okay. Along those points, Mr. Day has actually three points to make. So Mr. Day sufficiently alleged the facts in his amended petition. The facts are that plea counsel actively misadvised him that had he gone to trial and been convicted, he would be subjected to this enhancer. And it's notable here that Mr. Day put enhancer in quotes from the beginning of his pro se post-conviction petition. He also claims that the plea of guilty was based upon this misapprehension of the law and facts due to counsel's bad advice. Thus, in turn, his plea is unknowing and involuntary. Mr. Day's claim here is not vague or conclusory. It's clear and simple. Only the necessary facts are included. And because the petition at the second stage is considered true, and all the facts alleged have to be construed liberally in favor of Mr. Day, as alleged, counsel did actively misadvise him. And thus, an evidentiary hearing is necessary here. As the state argues, the word enhancer wasn't defined, but it should be, and it has to be explained. But it should be plea counsel that needs to define and explain this meaning of the word enhancer. And obviously, the connotation here is enhancer, enhanced sentence. Further, whether his claim is believable or not, that's a credibility determination that can be made after an evidentiary hearing. And it's speculative here to think that at this point, to believe there is some grand conversation between Mr. Day and plea counsel as to what this enhancer meant or what plea counsel advised him of. So, an evidentiary hearing is necessary. Second, the record doesn't positively rebut Mr. Day's claim, but rather supports it. As I mentioned before, there was that confusion right before he pled guilty. And it's notable here that, once again, plea counsel didn't jump in saying, oh, he isn't acceptable or he's not enhanceable. Plea counsel didn't say one way or the other. Further, the point of the post-conviction process is to address matters that are not explicitly in the record, such as this allegation here. So, as I mentioned earlier, the private conversations that counsel had with Mr. Day, plus this confusion, this didn't cure the trial court's emotions later on. Finally, the error is clear. Counsel actively misadvised him regarding the consequences of going to trial versus pleading guilty. And as a result of this bad plea, Mr. Day pled guilty. He's not required to allege innocence or have a plausible defense here. We're not disputing that in certain circumstances that that might be necessary. So, for example, if you're claiming ineffective assistance for advising a defendant that you never had, you don't have a defense. You don't have an affirmative defense. But, in fact, he's claiming he does, then you have to show that you have a defense and articulate that defense. If you're saying that, if you're claiming that counsel was ineffective for not discovering explanatory evidence, then, yes, you have to show innocence. But the way Mr. Day, the claim that Mr. Day is making here, there's no need for this plausible defense for innocence to show prejudice. Here, he would have been in no worse position had he been convicted after a trial, but at least he had the chance there. Had he gone to trial and not pled guilty based on this misrepresentation of counsel, then he had that slight chance of acquittal. So, instead, he pled guilty, gave up all of his rights at trial, his right to a trial as well. One of your burdens, though, is to show that the result would have been different, that before the counsel's unprofessional errors, the result would have been different. That's true. How do you meet that burden in this case? Which result are we talking about first? Well, the result is that he could have gone to trial. So the result is the plea versus the trial? Or is it that he would have been found innocent, potentially? What is the difference? Well, yes, Your Honor. The difference is that he could have gone to trial. He could have taken some sort of different plea. He, here, pled guilty. It was an open plea. He didn't have a negotiated plea based on this advice, based on, you know, having an answer. If you go to trial, he pled guilty. Well, we don't know if this is the only one the State offered, though, either. This could have been take it or leave it. So does he allege in his petition, for example, that but for this advice, I would have never pled guilty? Does he say that? Actually, in his petition, he states that but for counsel's misadvice, there's a substantial likelihood that the outcome of the proceedings would have been different. That's pretty vague, isn't it? Well, but that's the reason. He could have potentially had other offers. He could have waited for the State. But instead, based on the advice, he pled guilty to an open plea. And there was no cap. There was no menopause. There was no cap. So he just kind of took a risk here. Wasn't there a testimony from plea counsel stating that he never gave a definitive, this is what you're going to get, that he gave him the range up to 14 years, and that he never suggested that he had to take that plea? That's true, Your Honor. So plea counsel testified on two different occasions here. And on one of the occasions, he did tell, or he did testify that he gave him the maximum at 14. But I think that was post-trial, or post-plea counsel didn't ask him first, didn't ask him, you said the 14 was the maximum. But did you tell him about an answer? Did you tell him about an extended sentence? This was not, this issue wasn't discussed there. It stopped at, well, did you give him the maximum that it was 14? And plea counsel said yes. So that was the extent there. You said there were two occasions? Yes. I saw one. What was the other? There was the post-plea hearing, and then there was the post-conviction. So this post-conviction petition went to the third stage on a different matter. And so there, plea counsel also testified, but on a different matter. So this issue was not discussed. Okay. Thank you. Thank you very much. Okay, go ahead. I'll give you a minute. Mr. Daley? If you'll just give Justice Barberos a minute. I'll be here. Thank you. He'll be right back. Did you want to stand or sit? I'm fine. You're good? I'm good. You and I judge me about bad petitions. You're going to stand. Yes, sir. How is your neck, by the way? I'm doing very well. Yeah, you look great. Fingers crossed, nothing else happens. I know how you feel. Yes, I know. Mr. Daley, when you're ready. Thank you very much, Your Honor. Good morning to the police and court and counsel. My name is Patrick Daley. I'm here on behalf of the state. I want to jump right in to one of the first questions that you asked, Justice Gates, with regards to the admonishments of the court. I don't my research and my experience in this particular field, just by way of perhaps framing that topic and perhaps the way I approach this case myself from the state's perspective, is that while it's certainly relevant consideration with regards to proper admonishments by the trial court, there is authority in the state. So if the counsel affirmatively misrepresents terms of maximum, minimum, et cetera, then it can raise a constitutional issue in regards to whether the plea was actually going to be voluntarily entered into. And practically speaking, it makes sense. I mean, if a defendant, uneducated, in the system, is getting conflicting information, it would ultimately play into a finding at some point that the plea was not voluntary. So I'm not going to hang all my hands on that one hook that the admonishments were correct, although they were correct. And certainly that, I think, is part of the consideration. But what you just represented to us is the law, which is the law. And I appreciate you kind of falling on your sword in that regard. Doesn't that get into the third stage? No, I don't think so, Your Honor, because what we have here at the second stage is a necessity of making a substantial showing, a substantial violation, a substantial constitutional violation. But that's what you just said is the affirmative misrepresentation. Correct. Now, let me ask you this. You're going to take the position that he didn't make the substantial showing. Initially at the pleading stage, the state filed an answer admitting most of the defendant's allegations. Correct. How come? Well, a lot of the allegations, if I recall, were sort of like civil cases, you know, simple non-contestable type things, but the state did contest the substantive legal issues that were raised. And again, Your Honor, we're here at the second stage. Much like the first stage, the standard review is de novo. Okay. And so the level of this Court's deference to whatever happens below is minimal at best. We're all sort of arguing in this case, basically, the legal pleadings, and that would encompass, I believe, the legal sufficiency of the pleadings on their face. And that's the state's position here. When we've gotten now past the gist stage, and the Court's well aware of our three stages, we've got the gist, which is the lowest, we've got our substantial violation, the constitutional violation, which is obviously much greater. There's a reason for that, which I'll get to in a second. And, of course, then you get to the third stage, which is the evidentiary review. Now, the purpose of the second stage versus the first stage is that we will give defendants, you know, a considerable benefit, if you will, because they are not versed in the law and procedure to articulate just the gist of the claim. And the underlying principle there is once they get to that point, then they get an attorney appointed, and that attorney will consult and do all the things that they're required to under Rule 651 and certify this and that, and they will fashion the defendant's claims into a proper legal form, which would then essentially put the pleadings on the deck, if you will, for relief based upon a constitutional violation. But implicit, if not explicit in that prerequisite, is also the notion that when you articulate a constitutional claim, you're articulating a recognizable constitutional claim. Okay? I think it's sort of interesting. One of the arguments that counsel made when she was up here was that, well, okay, we don't really know what this enhancer means. It's not really clearly defined in the pleadings. But that's one for plea counsel to tell us, which is, number one, assumes that this actually occurred. But, number two, I think it's an interesting formulation, because what it suggests is that we're kind of at sort of a super gist standard in the second stage, and then let the state kind of figure out what it is at the third stage. But what we're here for is to put both the state and the court on notice of what the precise constitutional violation is. And I still don't know, and I haven't heard yet, what that constitutional violation is other than this very vague, inconclusive, and non-factual allegation that counsel told them about an enhancer. But what does that mean? Now, counsel states... Well, I think they say more than that. But for him telling me I would get the enhancer, I wouldn't have pled guilty. Because we have a plea involved. You're correct, Your Honor, but to answer that, okay, what we have is that the defendant is being advised of something that is a consequence that is not appropriate, appropriate, or legal, or is wrong in view of the current state of the law. Okay? And to simply say that I was told something, and because of that, and it was wrong, I wouldn't have pled guilty, is per se the definition of a vague and inconclusive and non-factual claim. But really, that's all that you have here. Absolutely, Your Honor. How can you say it's per se? Well, I don't think... You get around that by using sort of absolutist terms. It would be a... That's why we're here. We have a job, because... I think it would be a clear example, if you will, of what we might consider to be a vague and inconclusive and non-specific claim. Well, I think that's precisely why I asked for the relief, but that's under a different test. That's under the test of whether they met their substantial burden. Correct. So, you know, I've already assumed, for the purpose of my question, Ms. Naum, about the fact that, okay, he may have been given inappropriate advice. They still have a burden now to me, and I don't understand how when you say appropriate relief or whatever it was, they said you have to make a showing that but for what had been said, the outcome would have been different. So what outcome or the result would have been different? What are we talking about there? Well, in these types of arguments where there's a claim of misadvice by counsel, the ineffective assistance of counsel claim is typically framed in, A, you were given wrong advice, which encompasses the first problem in this curriculum test, which would be deficient representation. And then the prejudice comes in the fact that but for the fact that you had been given this improper advice, you would not have pled guilty, but were, in fact, going to try. That's the key. Yes. Nobody says that. Not explicitly. No. Like counsel, I kind of maybe wrongly sort of read it into the defense counsel's pleadings, or maybe I just, it's one of those situations where you read something because you're just looking for it and figure it out. Well, you've done it so many times that you presume it. I suppose that's absolutely correct. But I do think, now let me ask you, do you think from the state's perspective that they have to plead that? Absolutely, yes, correct. In fact, there is no, in fact, there's authority to the effect that there is no claim of ineffective assistance of counsel to plead unless you show that, because that's just part of the Strickland standard itself. So if you can't articulate and prove ultimately that you would not have pled guilty for this, then you would fail as a matter of necessity. And I, to get back a little bit to where I was, kind of talking about the plea, don't judge pleas on the policy. And when I get back to where I was talking to you about before was that when counsel says, well, we can go to this third state hearing and counsel can articulate exactly what this was. You know, the problem is how it sort of turns the whole notion of the defendant's burden of proof here on its head. I mean, in order to establish a claim of substantial violation, a constitutional violation, the Supreme Court has made it clear that you have to articulate facts in something specific, if you will, that states that this is the violation, the constitutional violation. Incorporated in this constitutional violation, Your Honors, is that there was something wrong that was stated. To me, to go back to the defendant's pro se allegation, and I know that's been superseded by the amendment group, but the defendant states this. If it went to trial, you would lose on all charges and time would be enhanced, meaning you'd get much more than the case currently even carries, much more time than the case currently even carries. Well, I mean, anyone who's done trial work in criminal law can tell you about the trial tax and, you know, the difference between if you negotiate a plea, you go before the court, or you have an open plea such as this one, certain counts, and then sort of throw your mercy on the court, versus if you go to trial and, you know, all the facts go out there for God and the world to see, the judge may not be necessarily so inclined to accept or may be inclined to give a maximum sentence for it as an open plea may not be the case. I mean, in other words, my point is this. If there are explanations for enhancer, they have absolutely nothing to do with anything that's even remotely wrong. Okay? Now, is that speculative? Absolutely. But whose burden is it to show, to get it out of the speculative realm? It's not the state's. The defendant's the one who brought the petition. The defendant's the one who gets to articulate in their plea what the constitutional violation is. But I think we're past that. I think once you hit the second stage and they argue that this was a Sixth Amendment violation, I think we're past that. I respectfully disagree around the Supreme Court cases that we talked about. I'm leaving the stage free. Make it pretty clear, and I believe those are second stage, that nonspecific allegations, vague and conclusory allegations do not meet the standard for a sentence. We can agree on that. But the fact that a defendant comes in and claims that his counsel told him he would get an extended sentence, an enhancer, if you will, if he went to trial and he should plead guilty, don't you think that that's an allegation of a Sixth Amendment violation? You're following the same trap the defendant has very carefully set up here, and that's this belief that the enhancer equates to extended term or equates to anything of some legal consequence of that minor. And the defendant's arguments are sort of replete with a sort of transformation of enhancer, which is really all the defendant actually pleads in the first state and in their amended petition, into enhanced sentence or extended term or et cetera, et cetera. But we don't know what that is. We just don't know. It would have meant nothing for the defense counsel to say, counsel told him that if he went to trial, he would get an extended term sentence, and face effects over the years. If he told them, oh, you know, there's a myriad of different things that could have pinpointed these things into a specific legal framework. But he doesn't do so. He just says enhancer. I don't know what enhancer means. They don't even know what enhancer means. They haven't recently given their definitions. You need a hearing. What's that? I guess that's why you need a hearing. You need a hearing to basically put them on, put your attorney on and say, did you tell them they didn't get an extended term sentence? Not for the state that doesn't bear the burden to put on their attorney and say, okay, what happened? Did you say anything? Let me ask you a question. Let me ask you a question. Sure. I found it very odd that the defendant filed a motion to reconsider, and he claimed in his motion that plea counsel was ineffective. Correct. And there was actually a hearing held on a motion to reconsider. That's correct. I find that very odd that you put your own attorney on in a motion to reconsider. Do you believe that the information from that hearing in any way impacts this hearing or this claim for a hearing? I think that the ‑‑ I may be wrong. Procedurally, please forgive me. The defendant had a new term, not plea counsel. It raised the claim of ineffective assistance of counsel post plea. It was termed as a motion to reconsider, but the terms of the motion were actually set forth in terms of ineffective assistance of counsel. So it's one of these kind of like you have a heavy, but the substance of the body of the motion doesn't really quite match, because clearly the allegations relate more to the voluntaryness of the plea. I'll finish this up because I'm out of time. So my question is, how does that impact this decision? Well, I think it impacts this decision because you'll note that during the course of this hearing, now, again, this specific allegation was never raised at that time in that post plea motion. I mean, the first time we're seeing this is in the post conviction petition. But counsel was asked in one of the inquiries, if you will, by a defense counsel, was the substance of his conversations, and he advised him that he was not promised any particular sentence, and that he would be subject at the time of the plea for the full range, which was 14 years, which was correct. So I do mention that in the brief as essentially one of those aspects where we know in the post conviction proceedings, facts that are evident in the record, which would rebut the claim on its face, are obviously grounds for which the trial court would dismiss. Again, the trial court didn't dismiss it on that basis, but here we are, the second stage is no more review. This court, for any reason that appears in the record, can affirm the lower court's judgment. I hope I answered your question. Yes, you did. Thank you, Your Honor, very much. Thank you very much. Ms. Long, do you have some comments? Yes. Before you get into the crux of your comments, if my understanding is correct, there was one claim of ineffective assistance of counsel that was allowed to go to the third stage. Has that hearing been held? Yes. And what was the result of that? There was no relief. Okay, so obviously otherwise this would be moved. That's right. Okay. Your Honor, there's a lot of what counsel has said. Let me ask you a question. Is that on appeal? Yes, that's on appeal. This entire case is on appeal. No. The third stage hearing. The denial of the first stage. Yes. Is that a separate appeal? No, that's a part of this appeal. Thank you very much. Okay. Your Honor, a lot of what counsel is saying, you know, what actually occurred, what actually took place, what the meaning of the answer is, this is why we need that third stage evidentiary hearing. Counsel kind of goes back into the pro se petition to talk about a line that Mr. Day wrote in his pro se petition. I asked this court to look at page four of the opening brief where this allegation is written out. There's a lot of quotes here that kind of put what Mr. Daly said into context. It seems to me that this defendant has had a couple of opportunities to specifically say what the result would have been but for this bad advice. There was a motion to reconsider. And I understand that these allegations weren't raised, but I'm talking about opportunity here. At that hearing, it's my understanding that he testified, the counsel testified he did not promise the defendant anything, he did not advise the defendant, et cetera. And that was not part of an appeal, that little portion of this. You had a third stage hearing that's part of this appeal where this issue was not raised. And now we're here on a separate opportunity, if you will. And we still don't have an allegation from this defendant that I can see. And that's what I keep asking about is how would the result have been different? You see what I'm saying? I'm already giving you, for the purposes of this question, I'm giving you the violation. Okay? Hypothetically, if I give you the violation, how do you meet the Strickland test? That's my question. Your Honor, you talk about all of these previous hearings. At the motion to reduce hearing, as you said, this wasn't discussed, at the third stage evidence hearing. Why not raise it? Well, it wasn't a part of the record at the time. So what they're trying to argue there is what was on the record. Same thing with the third stage evidence hearing. Only one of his claims from the amended petition went forward, so we couldn't address this claim. Which claim was that that went forward? Oh, that's the Latoya Williams. He was saying that there was a witness out there that could have helped his case. So that one went forward with the affidavit to Ms. Williams, but this specific allegation did not go forward. What we're saying is this allegation has to go forward. The Latoya Williams issue, if you will, that went to the third stage, that's not briefed here. No, we're not raising that issue. Okay, so when you said that that was part of this, it's not because it's not briefed and you haven't raised it. Right, we're not raising that argument, but that came up on appeal, so this is all one appeal is what I'm trying to say, if that makes sense. So, just so I understand, because I really don't want to get the answer to Justice Barbera's question. You're not arguing that the court erred in making a decision as to Ms. Williams? No. Thank you. Okay, good. Okay, so the only issue that we're dealing with is this enhancer issue. And the only issue there is whether you get a third stage. That's correct. Are you a hearing? Sorry? An evidentiary hearing. Yes. Okay. And back to your question. So, the petition specifically says that he was denied his effective assistance. I'm not giving you that. Right? And that the result would be a substantial likelihood of an outcome, of a different outcome. But what, that's my question, is you have a, the defendant has the burden of showing that the result would have been different. And all you say is it would have been different? Well, Your Honor, he says that he pled guilty based on this misrepresentation. Well, we don't know if that was a take it or leave it. We don't know. We don't have anything in the record that gives us information. And that's why I was saying to Mr. Daley there were opportunities. Like the defense lawyer could have said this was a take it or leave it. We did the best we could or something like that. The record is devoid of any of this information. So, your client has the burden to bring that forward, right? That's correct, Your Honor. So, help me. What would have been different? He wouldn't have pled guilty? I mean, that's kind of what we can get from the fact that he did plead based on this. So, I guess in the reverse, he wouldn't have pled guilty. Okay. And that would be your argument, he wouldn't have pled guilty. Not necessarily that he might have gone to trial, but he wouldn't have pled guilty. Because if he wouldn't have pled guilty, there might have been other pleas. We don't know at this point, right? That's correct, Your Honor. I think I kind of briefly touched on that. Okay, and that's exactly what I was asking you to explore a little more with me, if you have any more comments on that. That's what I was trying to understand. Nope. Sometimes my questions aren't very clear. I understand. I might not understand. No, no. Believe me, it's not your fault. Okay. Unless there's any other questions? No, Ms. Conlon. Thank you very much. Thank you. You did a very fine job. Okay. This case will be taken under advisement. Thank you both for your arguments. And a disposition will be issued in due course. Anything else, counsel? Okay. Thank you. Have a great day.